IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RITA G. BAUS,**                                    Case No. 3:16 CV 740

    Plaintiff,                                    Judge James G. Carr

    v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                   REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Rita Baus ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated March 25, 2016). Following review, the undersigned recommends the Court affirm the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits in November 2012, alleging disability as of March 12, 2011.[1] (Tr. 201-04). The claim was denied initially (Tr. 90-93) and on reconsideration (Tr. 95-97). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at an administrative hearing on September 3, 2014. (Tr. 26-62). Following the hearing, an administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled.

---

1. Plaintiff later amended her alleged onset date of disability to March 8, 2010 (Tr. 164), the date she underwent right knee surgery (Tr. 388).

(Tr. 13-20). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on March 25, 2016. (Doc.1).

**FACTUAL BACKGROUND**

Personal and Vocational Background

Plaintiff was born on July 12, 1954, and was 56 years old on the alleged onset date of disability. (Tr. 63). She has an eleventh grade education. (Tr. 34). At the time of the hearing, she worked part-time as an accounts payable clerk (Tr. 34-35) and lived with her husband (Tr. 33).

Relevant Physical Medical Evidence[2]

Plaintiff saw physician James Wysor, M.D., in December 1986, when she was 32 years old, for low back pain. (Tr. 486). An examination revealed lumbar tenderness, but no radiculopathy or suprapubic tenderness. *Id.* Plaintiff complained of recurrent back pain to Dr. Wysor in September 1987. (Tr. 485). An examination revealed "minimal" lumbar tenderness, normal hip range of motion, negative straight leg raising test, symmetric knee and ankle reflexes, and peripherally intact motor strength. *Id.* In September 1995, at an appointment with Dr. Wysor, Plaintiff reported low back pain, and a physical examination revealed bilateral tenderness at the lumbar sacral junction, negative straight leg raising test, and symmetric knee and ankle reflexes. (Tr. 483). In June 2006, she again complained of back pain to Dr. Wysor. (Tr. 481). A physical

---

2. Plaintiff's focuses her arguments on her physical limitations; as such, all other issues are waived. *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation omitted). Thus, for the sake of brevity, the factual background summarized herein will only include evidence relating to her physical limitations.

examination revealed lumbar tenderness, "somewhat diminished" reflexes, and a negative straight leg raising test. *Id.*

In April 2009, Plaintiff went to the emergency room following a car accident, where she complained of neck pain and some nausea. (Tr. 402-04). She had normal deep tendon reflexes, sensation, and range of motion in all extremities. (Tr. 403). Plaintiff had "some minimal" knee discomfort and some shoulder tenderness. *Id.* A chest x-ray revealed endplate spurring in the spine. (Tr. 399). A cervical spine x-ray showed multilevel disc space narrowing, greatest at C5-C6 and C6-C7, and endplate spurs.[3] (Tr. 400-01).

Plaintiff followed up with Dr. Wysor a few days after the accident and an examination revealed a satisfactory neck range of motion. (Tr. 450). She declined a consultation with a specialist. (Tr. 435). At the end of April 2009, Plaintiff had physical therapy for neck, left arm, low back, and right leg pain. (Tr. 442-43). Her "rehab potential" was good. (Tr. 443).

In July 2009, Dr. Wysor referred Plaintiff to neurosurgeon Dale Braun, M.D. (Tr. 435). Plaintiff saw Dr. Braun in September 2009, and had a normal neurologic examination. (Tr. 336-37). Plaintiff reported to Dr. Braun that physical therapy helped "some" to relieve her neck pain. (Tr. 336). An examination was unremarkable, including a full range of motion and no tenderness in her neck. (Tr. 336-37). Dr. Braun assessed Plaintiff with cervicalgia and cervical spondylosis without myelopathy, and recommended a MRI. (Tr. 337).

Plaintiff saw Dr. Wysor again in October 2009 for follow up and complained of neck and knee pain since the car accident. (Tr. 449). An examination revealed lateral joint line tenderness but without instability or effusion, and no erythema, warmth, or residual ecchymosis. *Id.*

---

3. Findings also showed possible metastatic disease, which was subsequently ruled out. (Tr. 333, 337).

In October 2009, following referral from Dr. Wysor (Tr. 434), Plaintiff saw orthopedic surgeon Michael Felter, M.D., for right knee pain (Tr. 397-98). An examination showed the following:

> Examination of the right knee shows no significant redness, warmth, swelling or effusion. There is no sign of ecchymosis. There is pain to palpation with patellar compression but no crepitation. She has full flexion, full extension. Quad and patellar tendon function are intact. There is no significant medial instability. Lachman test is somewhat limited secondary to guarding. McMurray's test causes slight medial and lateral discomfort.

(Tr. 397).

An x-ray of Plaintiff's right knee in October 2009 (Tr. 492) showed: "Chondromalacia patella with a discrete osteochondral defect in the posterior patellar articular surface[]", and an MRI in November 2009 revealed: "Horizontal cleavage tear posterior horn medical meniscus. High-grade chondromalacia patella medial facet. Moderate knee joint effusion." (Tr. 395-96).

In February 2010, Plaintiff went to Dr. Felter for follow up of her right knee. (Tr. 391). She wanted to postpone Dr. Felter's recommendation (Tr. 394) for right knee surgery at that time, but reported intermittent pain. (Tr. 391). She received a right knee injection. *Id.* Dr. Felter noted she recently experienced a "pop" in her left knee, which was "making some improvement" following an injection. *Id.*; Tr. 393. On March 8, 2010, Dr. Felter performed right knee arthroscopic surgery for a torn medial meniscus. (Tr. 388-90).

The following month, Plaintiff reported some improvement following knee surgery, but still had some pain exacerbated with activity. (Tr. 385). Dr. Felter advised her to lose weight and administered an injection. *Id.* Also, in April 2010, Dr. Wysor noted Plaintiff was recovering unusually slowly and had an upcoming "week in Florida in the near future to recuperate." (Tr. 448).

In August 2010, Plaintiff saw Dr. Felter, who examined her knees and diagnosed her with degenerative joint disease and right knee pain. (Tr. 383-84). He noted a right knee x-ray revealed progression of arthritis. *Id.* Following Dr. Felter's recommendation (Tr. 383-84), Plaintiff underwent a series of five right knee injections (Tr. 378-82).

At the end of August, Plaintiff complained of continuing right knee pain, and an examination showed:

> Examination of the right knee reveals neutral alignment. Slight effusion is noted. Mild medial joint line tenderness. Full active and passive range of motion is noted. The patella tracks well. Good quad strength. Normal stability in all directions. The skin is intact and clear over the knee. There is no tenderness to palpation in the calf. There is no redness, increased warmth, or pain on passive stretch of the calf. Pulses are intact.

(Tr. 382).

Dr. Felter opined Plaintiff had pre-existing asymptomatic arthritis in her right knee which was aggravated by the car accident. *Id.*

In February 2011, Plaintiff saw Dr. Braun for treatment of her neck pain. (Tr. 338-39). Dr. Braun noted a bone scan and x-ray showed no significant pathology. *Id.* Because there was no evidence of "true radiculopathy" and Plaintiff's "fear of claustrophobia with the MRI scanner", Dr. Braun recommended treatment with anti-inflammatory drugs. (Tr. 339).

The following month, at an appointment with Dr. Felter, Plaintiff opted to pursue additional injection therapy, rather than a total knee arthroplasty. (Tr. 376-77).

Plaintiff underwent physical therapy from February 2011 to May 2011. (Tr. 341). The physical therapist noted Plaintiff had improved right knee extension and over the course of treatment reported pain of 2-3/10 and 5/10. *Id.* Plaintiff cancelled the remainder of physical therapy appointments because she was "unhappy with [her] aquatic therapy program". *Id.*

5

Plaintiff fell in June 2011 and injured her right knee. (Tr. 362-63). A physical examination of both knees revealed slight effusion, mild joint tenderness, full active and passive range of motion, and normal stability in all directions. *Id.* Dr. Felter administered another round of injection therapy (Tr. 363-67), and noted Plaintiff would need to consider surgery eventually (Tr. 363).

In January 2012, Plaintiff began another series of left knee injections. (Tr. 355-60). She reported improvement over the course of treatment. *Id.* Dr. Felter conducted a physical examination, which showed normal right knee results, and slight effusion and mild tenderness in the left knee. (Tr. 359).

At an appointment with Dr. Felter in December 2012, Plaintiff reported a recurrence of "fairly severe pain" in her knees, worse in the left knee. (Tr. 496-97). Dr. Felter administered a left knee injection. (Tr. 497).

The following month, in January 2013, she complained of mid-back pain and muscle spasm for about one month. (Tr. 473). Plaintiff reported she found it difficult to take Motrin for the pain because it upset her stomach. *Id.*

In February 2013, Plaintiff reported severe right knee pain. (Tr. 503). Dr. Felter again began a series of injections because Plaintiff "ha[d] done well" with the treatment in the past. (Tr. 504).

March 2013 thoracic spine x-rays showed mild to moderate spondylosis in the mid to lower thoracic region. (Tr. 508).

A few days after the x-rays, on March 28, 2013, Plaintiff complained of generalized body aches  since her April 2009 car accident, exacerbated by staying in the same  position for more

6

than about an hour, especially when standing. (Tr. 546). Dr. Wysor's impression was cervical/thoracic spondylosis, for which he recommended physical therapy. *Id.*

Dr. Felter administered another series of five injections in the left knee in May 2013. (Tr. 526-32). Plaintiff reported improvement following the fifth injection. (Tr. 526).

In March 2014, during an appointment with Dr. Wysor for an upper respiratory infection, Plaintiff complained of back pain. (Tr. 543). A few months later, in May 2014, at an appointment with Dr. Wysor for a sore throat, Plaintiff reported back and hip pain for two weeks prior. (Tr. 542).

Dr. Felter administered another series of five right knee injections between April 2014 and June 2014. (Tr. 521-25). Plaintiff reported improvement. *Id.*

Opinion Evidence

On January 9, 2013, Marsha D. Cooper, M.D., performed a consultative examination of Plaintiff at the request of the state agency. (Tr. 455-62). She concluded:

> This patient is overweight, complains of problems of aches in some of her joints. The exam showed no current issues with effusions, redness, heat, or any gross deformities including the fact she has normal hands, normal dexterity and grip. She was noted to have a slight kyphosis of the spine with some roundedness of it, but nothing exceptionally gross. Part of this may be due to her weight and body habitus as well. Her blood pressure is currently well controlled on her medications. Based on this assessment, the patient has no significant degree of arthritis to make her unemployable.

(Tr. 462).

On January 16, 2013, state agency physician Leanne M. Bertani, M.D., determined Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; could occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs, ladders/ropes/scaffolds; was unlimited with regard to balancing; and should avoid concentrated

exposure to hazards. (Tr. 69-71). On May 17, 2013, a second state agency physician, Elizabeth Das, M.D., confirmed these restrictions with three exceptions: (1) Plaintiff was able to stand and/or walk for only two hours; (2) could never kneel or crawl; and (3) should avoid even moderate exposure to hazards. (Tr. 84- 86).

<u>Hearing Testimony</u>

At an administrative hearing on September 3, 2014, Plaintiff testified that a year and a half prior, she and her husband moved the washing machine and dryer upstairs because she was no longer able to go down the steps to the basement. (Tr. 34). She was working no more than thirteen hours a week as an accounts payable clerk but described difficulty doing so due to neck, and knee pain. (Tr. 34-38). She would stand up a few times every hour to stretch or walk for about five minutes at a time. (Tr. 37-38). A stomach condition limited doctors' ability to prescribe her certain medication for her impairments. (Tr. 38-39).

Plaintiff stated she suffered constant knee pain, aggravated by walking or standing. (Tr. 39-41). She estimated she could sit for approximately twenty minutes and stand for ten minutes at a time. (Tr. 40). Plaintiff testified she had neck pain (Tr. 42) and low back pain a "couple of times a day" which was aggravated by standing more than ten or fifteen minutes (Tr. 41). She went to the grocery store to get some items, but her husband did the "major shopping". (Tr. 42). When returning from the store, she would need to "lay flat" due to all over pain. (Tr. 43). Plaintiff stated her knee and back problems "[t]remendously" affected her ability to complete household chores. *Id*. She was however able to do some dusting, vacuuming, and laundry. (Tr. 43-44). Plaintiff stated she suffered a boating accident in 2009, and now only went boating a twice a year rather than three times a week. (Tr. 44). She stated she could no longer take a bath

8

(but was able to shower) because she was unable to get in and out of the bathtub. (Tr. 44-45). She also had to sit in a chair while getting dressed. (Tr. 45).

VE Testimony

In response to the ALJ's first question, the VE explained a hypothetical individual similarly situated to Plaintiff could perform her past work as an accounts payable clerk if she was limited to sedentary or light work and could occasionally use her lower extremities for pushing, pulling, and operation of foot controls; occasionally climb ramps/stairs, balance, stoop; never climb ladders/ropes/scaffolds, kneel, crouch, or crawl; and never be exposed to unprotected heights and hazardous machinery. (Tr. 52-53).

The discussion regarding the second hypothetical was as follows:

Q: Okay. For a second hypothetical, if I asked you again to assume an individual having the same age, educational level, and work experience as [Plaintiff] with the abilities and limitations set forth in the proceeding hypothetical with one change and one addition – I've now asked you to assume explicitly that this person is exertionally limited to the sedentary exertional category as that category is described in the commissioner's regulations and that the individual requires the option of alternating in one hour increments between sitting and standing. In your view, could such an individual perform the job of accounts payable clerk as that job was generally performed?

A: Judge, it's a sitting. Most people don't sit. I mean, they have – it's dynamic. They can sit and stand and it's in a – it takes positionings. She didn't have that long – as long as she stays on task and stays [sic], then that would be the appropriate –[4]

(Tr. 54). Following this response, the ALJ immediately proceeded with his questioning by moving on to add an additional limitation. *Id.*

ALJ Decision

In a written decision dated September 18, 2014, the ALJ made the following findings of fact and conclusions of law:

---

4. This was the VE's response in its entirety.

9

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since March 12, 2011, the alleged onset date.

3. The claimant has the following severe combination of impairments: degenerative disc disease, degenerative joint disease, obesity, and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she requires the option of alternating in one hour increments between sitting and standing, she can only occasionally utilize her lower extremities for pushing, pulling, or operation of foot controls, can only occasionally climb ramps or stairs, balance, and stoop, is precluded from climbing ladders, ropes, and scaffolds, and from kneeling, crouching, and crawling, and is precluded from work related exposure to unprotected heights and hazardous machinery.

6. The claimant is capable of performing past relevant work as a [sic] accounts payable clerk, DOT #216.482-010, sedentary exertional level, SVP 5, as that work is generally performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2011, through the date of this decision.

(Tr. 13-20) (internal citations omitted).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for disability benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff alleges the ALJ erred: (1) by improperly evaluating the opinion of Dr. Wysor; and (2) in relying on the VE's testimony Plaintiff could return to her past relevant work. The undersigned will address each assignment of error in turn.

Treating Physician Rule

Plaintiff first contends the ALJ erred in his evaluation of treating physician Dr. Wysor's opinion or, alternatively, his decision is not supported by substantial evidence. (Doc. 12, at 15-22). The Commissioner responds substantial evidence supports the ALJ's decision to assign little weight to Dr. Wysor's opinion and he provided adequate reasons for doing so. (Doc. 15, at 6-11). The undersigned agrees.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

12

obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544.

When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009); *see also Nelson v.*

*Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (holding ALJ adequately addressed opinion by indirectly attacking both its consistency and supportability with other record evidence).

Here, on August 18, 2014, Dr. Wysor completed a "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment".[5] (Tr. 555-56). He determined Plaintiff was capable of performing less than six hours of sedentary work[6] five days per week, explaining:

> [Plaintiff] currently works five hour days, three times a week, and could not tolerate more than this. Neck pain limits ability to do desk/computer work, both in terms of maintaining posture and also the pain affecting her concentration. Back pain requires frequent changes in position. Knee pain limits mobility.

(Tr. 555).

Dr. Wysor also concluded: (1) Plaintiff's pain "prevents ability to concentrate occasionally, [Plaintiff] would likely be off task 20% to 33% of the time" due to "osteoarthritis, bilateral knees, osteoarthritic cervical thoracic and lumbar spine"; (2) her pain complaints were reasonably caused by her impairments; (3) she would need to lie down "none to less than 1 [hour]"; (4) she was "unable to tolerate anti[-]inflammatory meds due to gastrointestinal disturbance"; (5) she would likely be absent from work two days per month (but he did not list

---

5. Dr. Wysor also completed a questionnaire regarding Plaintiff's mental impairments and determined they did not result in functional restrictions. (Tr. 452-53). As discussed above in footnote 2, Plaintiff waives this issue.

6. The form defines sedentary as follows:

> The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

the conditions that would cause this); (6) she would not need to take additional breaks from work activity more than regularly scheduled breaks every two hours; and (7) her limitations had lasted for at least twelve months. (Tr. 556).

At the time he completed the form, Dr. Wysor stated he first examined Plaintiff on October 2, 2009, and last examined her on August 8, 2014. *Id.* He left blank a section requesting him to: "Please comment on any other factors that would affect your patient's ability to perform and/or sustain work activity." *Id.*

> With regard to this opinion, the ALJ stated:

> * * * The undersigned has given Dr. Wysor's opinion little weight, as the limitation to part-time work is a vocational opinion, not a medical one, and certain aspects of this assessment (such as the "off task" percentage) are wholly speculative and inconsistent with the claimant's satisfactory performance of her part time work. In addition, the contemporaneously prepared treatment notes by this treating source hardly mention the issues the doctor now maintains are preclusive of full time employment and provide little support for this doctor's form report assessment. Exhibit 18F. In any event, and as the courts have long recognized, form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process. See, e.g., Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (terming form reports "weak evidence at best"); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole").

(Tr. 19).

Plaintiff first argues the ALJ failed to discuss whether the opinion was well-supported and in fact "did not provide any explanation as to whether the opinion was inconsistent with other substantial evidence of record." (Doc. 12, at 18).

This argument is not well-taken. The ALJ explained he gave Dr. Wysor's opinion little

weight because it was: (1) speculative; (2) inconsistent with Plaintiff's "satisfactory performance" of part-time work; (3) inconsistent with, and unsupported by, the doctor's contemporaneous treatment notes; (4) his opinion she could work part-time was a vocational, rather than medical, opinion; and (5) it was a "fill in a blank or check off a box" form. (Tr. 19). These reasons adequately explain the less than controlling weight the ALJ assigned to the treating physician's opinion, thus meeting the "good reasons" requirement. *Wilson,* 378 F.3d at 544. The reasons provided adequately touch upon some of the factors the ALJ was required to consider, namely supportability and consistency of the opinion. *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)).

Moreover, the ALJ's determination is supported by substantial evidence. First, Dr. Wysor's treatment notes around the time he issued the opinion on August 18, 2014, do not support such extreme limitations. (Tr. 555-56). Plaintiff complained of back pain and muscle spasm present for one month in January 2013. (Tr. 473). A few months later, in March 2013, she complained of dorsal spine pain. (Tr. 548). Lumbar x-rays revealed mild to moderate spondylosis of the lower thoracic spine. (Tr. 508, 546). Plaintiff reported "generalized body aching" since an April 2009 car accident, exacerbated by sitting in the same position for more than about an hour, especially standing for more than an hour. (Tr. 546). Following a physical examination, Dr. Wysor's impression was cervical/thoracic spondylosis. *Id*. He recommended physical therapy. *Id*. Plaintiff returned to Dr. Wysor in March 2014 for treatment of an upper respiratory infection, and reported back pain. (Tr. 543). A few months later, during an appointment for a sore throat, Plaintiff complained of back pain to Dr. Wysor. (Tr. 542). Five months later, Dr. Wysor issued

his August 2014 opinion. His opined limitations in this opinion, however, are unsupported by his own contemporaneous treatment notes.

Second, there is substantial evidence supporting the ALJ's determination Dr. Wysor's opinion is inconsistent with Plaintiff's satisfactory performance of her part-time work. As of the hearing, Plaintiff worked part-time as an accounts payable clerk, which required her to sit and use a computer. (Tr. 34-38). She stood up and moved around "[a] couple of times within [an] hour" to "get [her] bearings and then sit back down." (Tr. 37). Plaintiff estimated she was away for her work station five minutes at a time (Tr. 37), and did not receive accommodations at work (Tr. 47). The ALJ noted: "around 25% of [Plaintiff's] part time hours (3 of 13) involve working at the counter of the furniture store, filling in for others, at which time she is less able to engage in the positional changes she allegedly requires than when she is working alone in her private office." (Tr. 17); *see* Tr. 49. The ALJ appropriately considered her description of tasks at her part-time job and found they were inconsistent with Dr. Wysor's more severe limitations. *See Simpson v. Colvin*, 2013 U.S. Dist. LEXIS 116658, at *39 (M.D. Tenn. Aug. 16, 2013), *remanded on other grounds* 2013 U.S. Dist. LEXIS 127329 (Sept. 4, 2013) ("[I]n weighing the consistency of these medical opinions with the record as a whole, the ALJ reasonably concluded that some of the more severe restrictions were contradicted by the plaintiff's demonstrated ability to meet the demands of her work as a part-time cashier.").

Third, the ALJ appropriately considered the opinions of the state agency physicians and consultative examiner. The ALJ gave great weight to the opinions of state agency physicians Drs. Leanne Bertani, M.D., and Elizabeth Das, M.D; and some weight to the opinion of consultative examiner Dr. Marsha Cooper. (Tr. 18-19, 63-72, 75-88).

Non-examining sources are physicians, psychologists, or other acceptable medical sources that have not examined the claimant, but review medical evidence and provide an opinion. § 416.902. The ALJ will consider the findings of these non-examining sources as opinion evidence, except as to the ultimate determination about whether Plaintiff is disabled. § 416.927. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(c), (d); SSR 96–6p, 1996 WL 374180, at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas,* 832 F. Supp. 2d at 823-24.

The ALJ gave "great weight" to the state agency reviewers' opinions that Plaintiff remained capable of performing a limited range of light work because they "are generally consistent with the improvement reported in the [Plaintiff's] treatment notes and the findings of the consultative medical examiner. . .". (Tr. 18-19). The ALJ noted consultative examiner Dr. Cooper found Plaintiff to have a full range of motion in the cervical and lumbar spine; "5/5 (full) strength throughout and normal grip strength"; "full range of motion in the knees bilaterally, no effusion of the knees, and normal strength in the lower extremities"; and "no significant degree of arthritis to make her unemployable". *Id.* The ALJ assigned the opinion "some weight" because it was consistent with Plaintiff's "generally normal objective findings". (Tr. 19). The ALJ,

however, decided to give Plaintiff "the benefit of any reasonable doubt" in finding her to be "somewhat more limited." (Tr. 18-19).

Fourth, an ALJ may properly cite, as a reason for giving an opinion less weight, the "check-box" nature of that opinion. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings . . . .'") (quoting *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)); *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because [the treating physician] failed to identify objective medical findings to support his opinion [on a questionnaire] regarding [the claimant's] impairments, the ALJ did not err in discounting his opinion."); *see also Hyson v. Comm'r of Soc. Sec.*, 2013 WL 2456378, *14 (N.D. Ohio) (listing cases rejecting conclusory, or check box, opinions). Plaintiff's brief argument the opinion is not merely a "check box" form (Doc. 12, at 22) is not well-taken. The form does indeed include various "check boxes" and Dr. Wysor added explanation for only some of the boxes he checked. (Tr. 555-56). The ALJ therefore did not err in considering the format of the opinion as one factor in assigning it little weight.

After providing "good reasons" for giving the treating physician less than controlling weight, the ALJ appropriately gave great weight to the opinions of state agency physicians and the consultative examiner. *See Douglas*, 832 F. Supp. 2d at 823-24. It is ultimately the ALJ, not a medical source, tasked with making the RFC determination. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

Step-Four Determination

Plaintiff states the ALJ erred in Step Four of his analysis by relying upon the confusing VE testimony to determine Plaintiff was capable of performing her past work. (Doc. 12, 23-25). The Commissioner responds the ALJ appropriately relied upon the VE's responses to hypothetical questions in determining she could perform her past relevant work, and if Plaintiff found any of the VE testimony confusing, she had to opportunity to clarify it at the hearing and failed to do so. (Doc. 15, at 11-14).

At Step Four of the sequential evaluation, the ALJ is charged with making a determination regarding a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a), (f). If she can perform past relevant work she is found to be not disabled and the analysis ends. *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical question to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). The ALJ is only required to include in his hypothetical those limitations he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Here, the second hypothetical question, identical to the RFC, was presented to the VE who determined the hypothetical individual would be able to perform Plaintiff's past relevant work of accounts payable clerk "as that job was generally performed". (Tr. 54). In response to

whether the hypothetical individual could perform Plaintiff's past work, the VE stated "as long as she stays on task and stays [sic], then that would be the appropriate". *Id.* The ALJ, apparently satisfied with this response, proceeded in his questioning. *Id.* The ALJ was only required to include in his hypothetical question limitations he found credible, *Casey*, 987 F.2d at 1235, and Plaintiff does not challenge the ALJ's credibility determination.[7] Further, at Step Four of the evaluation, a claimant has the burden to prove disability. 20 C.F.R. § 404.1512(a). Plaintiff had the opportunity to clarify the VE's response to the second hypothetical at the hearing and failed to do so. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.") Plaintiff also argues the Dictionary of Occupation Titles (DOT) definition for accounts payable clerk involves handling documents and a computing and when these tasks were posed to the ALJ, he determined it would be difficult for the individual to perform. (Doc. 16, at 5). This argument is not well-taken because "the VE is permitted to rely on sources other than the DOT in evaluating a hypothetical." *Baranich v. Barnhart*, 128 F. App'x 481, 486 n. 3 (6th Cir. 2005) (citing 20 C.F.R. § 404.1566(d)); *see also Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994).

The ALJ appropriately posed hypothetical questions to the VE and relied upon his responses to conclude Plaintiff was capable of performing her past relevant work as an accounts payable clerk. The Step Four determination is therefore supported by substantial evidence.

---

7. Plaintiff briefly mentions the ALJ's finding that Plaintiff was "partially credible" in her reply brief (Doc. 16, at 2), but does not develop the argument and did not address the credibility determination in her initial brief. *See Kennedy*, 87 F. App'x at 466 (issues not raised in claimant's brief are waived); *see also McPherson*, 125 F.3d at 995-96.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned recommends the Court find the ALJ's decision supported by substantial evidence, and affirm the Commissioner's decision denying benefits.


     s/James R. Knepp, II
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).