**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Rita G. Baus,                          Case No. 3:16CV00740

           Plaintiff,

      v.                                   **ORDER**

Acting Commissioner of Social Security,

           Defendant.

This is a Social Security case in which the plaintiff, Rita G. Baus, appeals the Commissioner's decision denying her application for disability insurance benefits (DIB).

An administrative law judge (ALJ) found Baus was not under a disability. As a result, the ALJ denied plaintiff's claims.

Pending is the Magistrate Judge's Report and Recommendation (R&R), which recommends affirming the ALJ's decision denying benefits. (Doc. 17).

Baus objects to the R&R and asks that I overrule the R&R and reverse the Commissioner's decision. (Doc. 18).

For the following reasons, I adopt in full the R&R, and I affirm the ALJ's decision.

### Background

### Factual Background

Plaintiff began a treatment relationship with Dr. James Wysor, M.D., in 1986 for recurrent lower back pain.

In September, 1995, plaintiff returned to Dr. Wysor, again complaining of low back pain. A physical examination revealed bilateral tenderness at the lumbar sacral junction, negative straight leg raising test, and symmetric knee and ankle reflexes. In June, 2006, plaintiff went back to Dr. Wysor with similar complaints, and a physical examination showed lumbar tenderness, diminished reflexes, and a negative straight leg raising test.

In April, 2009, plaintiff was in a car accident, and as a result, she went to the emergency room, complaining of neck pain and nausea. Despite some knee discomfort and shoulder tenderness, plaintiff showed normal deep tendon reflexes, sensation, and range of motion in all extremeties. A chest x-ray showed endplate spurring in plaintiff's spine, and a cervical spine x-ray showed multilevel disc space narrowing and endplate spurs.

A few days after the accident, plaintiff went to Dr. Wysor, where an examination revealed satisfactory neck range of motion. Plaintiff participated in physical therapy for neck, left arm, low back, and right leg pain, demonstrating good potential for rehabilitation.

In July, 2009, Dr. Wysor referred plaintiff to Dr. Dale Braun, M.D.,–a neurosurgeon. At a September, 2009 appointment with Dr. Braun, the results of plaintiff's neurological examination were normal. A physical examination showed plaintiff had a full range of motion and no tenderness in her neck. Dr. Braun diagnosed plaintiff with cervicalgia and cervical spondylosis without myelopathy and recommended an MRI.

In October, 2009, plaintiff followed up with Dr. Wysor. At that appointment, plaintiff complained of neck and knee pain. An examination showed joint line tenderness without instability or effusion and no erythema, warmth, or residual ecchymosis. After the appointment, Dr. Wysor referred plaintiff to an orthopedic surgeon–Dr. Michael Felter, M.D.,–to treat her right knee pain.

Dr. Felter made the following notes after evaluating plaintiff:

> Examination of the right knee shows no significant redness, warmth, swelling or effusion. There is no sign of ecchymosis. There is pain to palpation with patellar compression but no crepitation. She has full flexion, full extension. Quad and patellar tendon function are intact. There is no significant medial instability. Lachman test is somewhat limited secondary to guarding. McMurray's test causes slight medial and lateral discomfort.

(Tr. 397).

In February, 2010, plaintiff went back to Dr. Felter. Despite intermittent knee pain and Dr. Felter's recommendation, plaintiff postponed right knee surgery. Instead, plaintiff received a right knee injection. With respect to plaintiff's left knee, Dr. Felter noted that she recently heard or felt a "pop."

On March 8, 2010, Dr. Felter performed right knee arthroscopic surgery for a torn medial meniscus. After surgery, plaintiff expressed she felt improvement in her right knee but still experienced pain caused by activity. In April, 2010, based on her unusually slow recovery, Dr. Felter advised plaintiff to lose weight and also gave her another right knee injection.

In August, 2010, Dr. Felter examined plaintiff's knees and diagnosed degenerative joint disease, right knee pain, and progressive arthritis. As a result, Dr. Felter administered a series of five right knee injections. At the end of that month, plaintiff's complaints of continuing right knee pain continued. An examination revealed the following:

> Examination of the right knee reveals neutral alignment. Slight effusion is noted. Mild medial joint line tenderness. Full active and passive range of motion is noted. The patella tracks well. Good quad strength. Normal stability in all directions. The skin is intact and clear over the knee. There is no tenderness to palpation in the calf. There is no redness, increased warmth, or pain on passive stretch of calf. Pulses are intact.

(*Id.* at 382).

Based on this examination, Dr. Felter concluded that plaintiff suffered pre-existing asymptomatic arthritis in her right knee, aggravated by the April, 2009 car accident.

In February, 2011, plaintiff sought treatment from Dr. Braun for neck pain. A bone scan and x-ray showed no significant pathology. Dr. Braun recommended further treatment with anti-inflammatory drugs.

Then, after another appointment with Dr. Felter, plaintiff elected to pursue additional injection therapy, as opposed to undergoing a total knee arthroplasty.

From February, 2011 to May, 2011, plaintiff participated in physical therapy. Despite improved right knee extension throughout the course of treatment, plaintiff was dissatisfied and cancelled her remaining physical therapy appointments.

In June, 2011, plaintiff fell, further injuring her right knee. A physical examination of both knees showed slight effusion, mild joint tenderness, full active and passive range of motion, and normal stability in all directions. Plaintiff received another round of injections, and Dr. Felter told her that, eventually, she would need to consider another surgery.

In January, 2012, plaintiff started another round of knee injections–this time in her left knee. That same month, a physical examination performed by Dr. Felter showed normal right knee results and slight effusion and mild tenderness in plaintiff's left knee.

In December, 2012, however, plaintiff told Dr. Felter she was experiencing fairly severe pain in both knees. Because her pain was worse in the left knee, Dr. Felter administered a left knee injection.

In January, 2013, plaintiff again complained of mid-back pain and muscle spasms. At that time, Dr. Marsha D. Cooper, M.D., performed a consultative examination at the state agency's

4

request.[1] In addition, two state agency physicians–Drs. Leanne M. Bertani, M.D., and Elizabeth Das, M.D.,–provided opinions.[2]

The following month, plaintiff complained of severe right knee pain. As a result, Dr. Felter performed a series of injections based on plaintiff's previous success with this treatment plan.

In March, 2013, thoracic x-rays revealed mild to moderate spondylosis in plaintiff's mid to lower thoracic region. Not long after the x-rays, plaintiff stated she had experienced body aches generally since the time of her April, 2009 car accident, and those aches worsened when she remained in the same position for more than an hour, especially while standing. Dr. Wysor diagnosed cervical/thoracic spondylosis and recommended physical therapy.

In May, 2013, Dr. Felter administered yet another series of injections in plaintiff's left knee. After the fifth injection, plaintiff reported improvement.

Nearly one year later, in March, 2014, plaintiff returned to Dr. Wysor, complaining of back

---

[1] Dr. Cooper reached the following conclusions:

> The patient is overweight, complains of problems of aches in some of her joints. The exam showed no current issues with effusions, redness, heat, or any gross deformities including the fact she has normal hands, normal dexterity and grip. She was noted to have a slight kyphosis of the spine with some roundedness of it, but nothing exceptionally gross. Part of this may be due to her weight and body habitus as well. Her blood pressure is currently well controlled on her medications. Based on this assessment, the patient has no significant degree of arthritis to make her unemployable.

(Tr. 462).

[2] Dr. Bertani determined that plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs, ladders/ropes/scaffolds; was unlimited with regard to balancing; and should avoid concentrated exposure to hazards.

Dr. Das confirmed the restrictions listed by Dr. Bertani with three exceptions: plaintiff 1) could stand and/or walk for only two hours; 2) could never kneel or crawl; and 3) should avoid even moderate exposure to hazards.

5

pain. Similarly, in May, 2014, plaintiff told Dr. Wysor she had experienced back and hip pain for the last two weeks.

Finally, between April, 2014 and June, 2014, Dr. Felter administered another series of right knee injections, after which plaintiff reported improvement.

### Procedural Background

In November, 2012, plaintiff filed an application for benefits, alleging her disability began on March 12, 2011.[3] Initially and upon reconsideration, plaintiffs claims were denied.

Plaintiff requested and received an administrative hearing on September 3, 2014. At the hearing, the ALJ questioned the vocational expert (VE), posing two different hypotheticals.

First, the ALJ asked the VE to consider a hypothetical individual with the same age, education, and work experience as plaintiff and assume:

> this individual is exertionally limited to the light exertional category, can only occasional [*sic*] utilize her lower extremeties for pushing, pulling, and operation of foot controls, can only occasionally climb ramps or stairs, balance and stoop, and is precluded from climbing ladders, ropes, or scaffolds and from kneeling, crouching and crawling. . . . And I would ask you additionally to assume this individual is precluded from work related exposure to unprotected heights and hazardous machinery.

(*Id.* at 52).

With respect to the first hypothetical, the VE testified that an individual with those abilities and limitations could perform her past work as an accounts payable clerk if limited to sedentary or light work.

Second, the ALJ asked:

For a second hypothetical, if I asked you again to assume an individual having the

---

[3] Plaintiff later amended the alleged onset date to March 8, 2010–the date of her right knee surgery.

> same age, educational level, and work experience as Ms. Baus with the abilities and limitations set forth in the proceeding hypothetical with one change and one addition–I've now asked you to assume explicitly that this person is exertionally limited to the sedentary exertional category as that category is described in the commissioner's regulations and that the individual requires the option of alternating in one hour increments between sitting and standing. In your view, could such an individual eprform the job of accounts payable clerk as that job was generally performed?

(*Id.* at 54).

In response to the second hypothetical, the VE testified, "Judge, it's a sitting. Most people don't sit. I mean, they have–it's dynamic. They can sit and stand and it's in a–it takes positionings. She didn't have that long–as long as she stays on task and stays, then that would be the appropriate–" (*Id.*).[4] At that point, the ALJ, apparently satisfied with the VE's response, immediately continued with his questioning.

Following the hearing, the ALJ issued an unfavorable decision, concluding plaintiff was not under a disability, as defined by the Social Security Act, at any time from March 12, 2011–the alleged onset date–through September 18, 2014–the date of the ALJ's decision.

First, the ALJ determined that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018 and that plaintiff has not engaged in substantial gainful activity since March 12, 2011–the alleged onset date.

Next, the ALJ concluded that plaintiff suffers the following severe impairments: degenerative disc diseases, degenerative joint disease, obesity, and hypertension. The ALJ then concluded that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[4] I note that this excerpt reflects the entirety of the VE's testimony relating to the ALJ's second hypothetical.

Next was the ALJ's RFC finding. The ALJ found that the plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the limitations found in the second hypothetical posed to the VE.[5]

Following the RFC finding, the ALJ stated that plaintiff is capable of performing past relevant work as an accounts payable clerk–sedentary exertional level, as that work is generally performed in the national economy. Further, the ALJ concluded that work would not require performance of work-related tasks precluded by the plaintiff's RFC. As a result, according to the ALJ, plaintiff has not been under a disability at any time from March 12, 2011 through the date of his decision.

The Appeals Council denied plaintiff's request for review, so the ALJ's decision became final.

Plaintiff then filed the present suit seeking review of the ALJ's decision.

In the R&R, the Magistrate Judge recommends that I affirm the ALJ's decision denying benefits.

Plaintiff objects to the R&R based on two arguments: 1) the ALJ failed to provide good reasons for the weight given to the opinion of his treating physician, Dr. Wysor, in violation of the treating physician rule; and 2) the ALJ erred at Step 4 of the analysis by improperly relying upon the VE's testimony to determine plaintiff was capable of performing past relevant work.

For the reasons that follow, I adopt the Magistrate's R&R and affirm the ALJ's decision

---

[5] As noted above, those limitations are: option of alternating in one hour increments between sitting and standing; only occasionally utilize her lower extremities for pushing, pulling, or operation of foot controls; only occasionally climb ramps or stairs, balance, and stoop; precluded from climbing ladders, ropes, and scaffolds, and from kneeling, crouching, and crawling; and precluded from work related exposure to unprotected heights and hazardous machinery.

8

**Standard of Review**

When reviewing a Magistrate Judge's R&R, I make a *de novo* determination regarding the portions to which plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings and whether the ALJ applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I may "not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. *See* § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard, supra,* 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *see Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

**A. The ALJ Did Not Violate the
Treating Physician Rule**

Plaintiff's first argument is that the ALJ violated the treating physician rule by improperly disregarding the opinion of Dr. Wysor, her treating physician. Specifically, plaintiff contends the ALJ failed to provide good reasons for the weight afforded to Dr. Wysor's August 8, 2014 opinion.

Dr. Wysor's August, 2014 opinion is found in a "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment." (Medical Source Statement).

In the Medical Source Statement, Dr. Wysor first opined that because of her neck, back, and knee pain, plaintiff was only capable of performing less than six hours of sedentary work five days per week. Specifically, Dr. Wysor opined, "[Plaintiff] currently works five hour days, three times a week, and could not tolerate more than this. Neck pain limits ability to do desk/computer work, both in terms of maintaining posture and also the pain affecting her concentration. Back pain requires frequent changes in position. Knee pain limits mobility." (Tr. 555).

Dr. Wysor also reached the following conclusions in the Medical Source Statement: 1) "[plaintiff] suffers from pain that . . . prevents ability to concentrate occasionally [and] likely would be off task 20% to 33% of the time" caused by "osteoarthritis, bilateral knees, osteoarthritis cervical thoracic and lumbar spine"; 2) plaintiff's complaints were reasonably caused by her conditions; 3) plaintiff would need to lie down "none to less than 1 [hour]"; 4) "[plaintiff was] unable to tolerate anti[-]inflammatory med[ications] due to gastrointestinal disturbance"; 5) "if she were to attempt work, [plaintiff] would likely be absent . . . 2 days . . . per month"; 6) plaintiff would "[not] need to take breaks from work activity more than regularly scheduled every-two-hour breaks"; and 7)

plaintiff's limitations had lasted for at least twelve months. (*Id.* at 556).

Finally, Dr. Wysor left blank a portion of the Medical Source Statement that stated, "Please comment on any other factors that would affect your patient's ability to perform and/or sustain work activity." (*Id.*)

It is well-established that an ALJ generally must give greater deference to the opinions of a claimant's treating physicians than to those of non-treating physicians. *Gayheart v. Comm'r*, 710 F.3d 365, 375 (6th Cir. 2013). This is "[b]ecause treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting 20 C.F.R. § 416.927(d)(2)).

An ALJ gives a treating physician's opinion controlling weight where it is: 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and 2) "not inconsistent with the other substantial evidence in the case record." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). In other words, a treating physician's opinion receives deference only when supported by objective medical evidence. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 804-05 (6th Cir. 2008).

If an ALJ determines a treating physician's opinion is not entitled to controlling weight, he or she still must determine how much weight to give the opinion by applying specific factors found in the applicable regulations. *Gayheart, supra,* 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Those factors include: 1) the examining relationship; 2) the treatment relationship; 3) the length of treatment and frequency of examination; 4) the opinion's supportability and

consistency; 5) the source's specialization; and 6) any other factors tending to support or contradict the opinion. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Although an ALJ must provide good reasons, he or she need not enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 201); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).

Finally, the ALJ must give "good reasons" for discounting a treating physician's opinion, as well as for the weight ultimately given to the opinion. *Blakley, supra,* 581 F.3d at 405; *Vance, supra,* 260 F. App'x at 804-05. Those "good reasons" must be supported by the record and sufficiently specific such that a subsequent reviewer knows the weight assigned to the treating physician's opinion and the reasons for that weight. *Gayheart, supra,* 710 F.3d at 376; *Blakley, supra,* 581 F.3d at 406. An ALJ's failure to articulate adequate reasons explaining the weight assigned to the treating physician's opinion may result in remand, even when "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011).

Here, the ALJ gave little, rather than controlling, weight to Dr. Wysor's opinion.[6]

---

[6] Specifically, the ALJ stated:

The undersigned has given Dr. Wysor's opinion little weight, as the limitation to part-time work is a vocational opinion, not a medical one, and certain aspects of this assessment (such as the "off task" percentage) are wholly speculative and inconsistent with the claimant's satisfactory performance of her part time work. In addition, the contemporaneously prepared treatment notes by this treating source hardly mention the issues the doctor now maintains are preclusive of full time employment and provide little support for this doctor's form report assessment. Exhibit 18F. In any event, and as the courts have long recognized, form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process. *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (terming form reports "weak evidence at best"); *Crane v. Shalala*,

After reviewing the record, I find the ALJ provided adequate reasons for doing so, and his decision was supported by substantial evidence. The ALJ, in fact, provided several reasons for his ultimate decision regarding the proper weight to give Dr. Wysor's medical opinion.

First, the ALJ noted that Dr. Wysor's August, 2014 opinion regarding plaintiff's limitation to part-time work was a vocational opinion, rather than a medical opinion, that he was not authorized to render. The ALJ also stated that parts of Dr. Wysor's opinion, for example, the "off task" percentage, were "wholly speculative" and inconsistent with plaintiff's successful performance of her part time work. (Tr. 19).

The ALJ went on to discuss the treatment notes Dr. Wysor documented contemporaneous to the time he issued the August, 2014 opinion. According to the ALJ, those treatment notes were inconsistent with Dr. Wysor's conclusion regarding plaintiff's work capabilities. Dr. Wysor made little mention in his treatment notes of the issues he ultimately opined precluded plaintiff from engaging in full-time work in the August, 2014 opinion. As a result, the ALJ stated, those notes offered minimal support for the opinions given in Dr. Wysor's Medical Source Statement.

Finally, as support for his controlling weight determination, the ALJ properly discussed the significance of the fact that the Medical Source Statement was a "form report" as a basis for affording little weight to Dr. Wysor's opinion. *See, e.g., Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) ("Many courts have cast doubts on the usefulness of these forms and agree

---

76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole.").

(Tr. 19).

that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings . . . .'") (quoting *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)); *see also Mason v. Shalala*, 994 F.2d 1058, 1065-66 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [W]here these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal citations and quotation marks omitted).

All of these reasons adequately support the ALJ's decision to afford less than controlling weight to Dr. Wysor's August, 2014 opinion and address some of the factors an ALJ must consider, including supportability and consistency of the opinion. Plaintiff is correct that the "good reasons" rule functions as a "procedural protection," *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004), and "a way of ensuring 'meaningful review' of the ALJ's decision." *Nelson*, *supra,* 195 F. App'x at 472 (quoting *Wilson, supra,* 378 F.3d at 546). However, that does not require, as plaintiff suggests, an ALJ to engage in an in-depth or "exhaustive factor-by-factor analysis." *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Allen*, *supra,* 561 F.3d at 651; *see also Nelson, supra*, 195 F. App'x at 470.

Plaintiff cites *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009), to support her argument that the ALJ in this case failed to provide good reasons for the little weight afforded to Dr. Wysor's opinion. However, I distinguish the ALJ's analysis in *Hensley* from that of the ALJ in this case.

In *Hensley*, the Sixth Circuit remanded the case to be returned to the Commissioner because "[t]he only stated reason the administrative judge gave for rejecting the treating physician's medical opinion that [the claimant] could not engage in repetitive pushing and pulling was that another

14

physician had reached the opposite conclusion." *Id.* at 266. According to the Sixth Circuit, "[t]hat was not an adequate basis for rejecting [the treating physician's] opinion." *Id.* The Sixth Circuit continued:

> We have stated that "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.

*Id.* at 267 (quoting *Wilson, supra,* 378 F.3d at 546 (quoting *Halloran v. Barnhart*, 36 F.3d 28, 32-33 (2d Cir. 2004))).

Here, as discussed above, the ALJ provided more than one reason for his decision to afford little weight to Dr. Wysor's opinion. Further, unlike in *Hensley*, the ALJ did not base that decision solely on the fact that another physician reached a conclusion contrary to that of Dr. Wysor–a crucial fact in the Sixth Circuit's decision to remand. *Id.* ("Indeed, the administrative judge's reason for declining to give Dr. Cross' opinion controlling weight would seriously undermine the Commissioner's position that controlling weight ordinarily should be given to the opinion of the treating physician. In most cases such as this, there will be conflicting medical opinions. If the existence of such a conflict is enough to justify denying the treating physician's report controlling weight, it would be a rare care indeed in which such weight would be accorded."). The fact that the ALJ did not discuss the nature and extent of plaintiff's treatment relationship with Dr. Wysor, which, admittedly, was extensive, does not render his decision procedurally flawed. Rather, I find that the reasons given by the ALJ in this case "comprehensively set forth the reasons for the weight assigned to [Dr. Wysor's] opinion," *id.,* and were "sufficiently specific to make clear to any subsequent reviewers the weight given to [Dr. Wysor's] opinion and the reasons for that weight." *Wilson, supra,*

378 F.3d at 544.

The ALJ followed the proper analysis and adhered to the treating physician rule, providing "good reasons" for giving the treating physician's opinion less than controlling weight; therefore, plaintiff's argument that the ALJ violated the treating physician rule with respect to Dr. Wysor's August, 2014 opinion is not well taken, and I overrule plaintiff's objection.

### B. The ALJ Did Not Err at Step 4

Plaintiff's second argument is that the ALJ erred at Step 4 of the analysis found at 20 C.F.R. § 404.1520 to determine whether plaintiff is disabled. Specifically, plaintiff takes issue with the second hypothetical question the ALJ posed to the VE,[7] which led the VE to testify that such a person would be able to perform plaintiff's past relevant work as an accounts payable clerk "as that job was generally performed." (Tr. 54).

At Step Four of the analysis, the ALJ must make a determination regarding the claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a), (f). If the claimant can perform past relevant work, the ALJ makes a finding that he or she is not disabled, and the analysis ends. *Id.* If, in making that determination, an ALJ relies on a vocational expert's testimony responding to the ALJ's hypothetical question to provide substantial evidence, the posed hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ need only include in the hypothetical those limitations he or she deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as

---

[7] The hypothetical question that plaintiff objects to matches the ALJ's ultimate RFC finding.

credible by the finder of fact.").

I first address plaintiff's argument regarding the "convoluted" nature of the VE's testimony, which plaintiff further describes as "beyond meaningful appellate review." (Doc. 18 at 11-12). While I note the confusing nature of and abrupt ending to the VE's testimony in response to the ALJ's second hypothetical,[8] I find that the ALJ properly posed the hypothetical question and relied upon the VE's responses to conclude plaintiff was capable of performing her past relevant work as an accounts payable clerk.

At Step Four of the analysis, the burden rests with the plaintiff to prove disability. 20 C.F.R. § 404.1512(a). Thus, if plaintiff was dissatisfied with the second hypothetical and the VE's response thereto, she had the opportunity, and, therefore, should have taken advantage of that opportunity, to clarify the VE's response at the administrative hearing. The fact that plaintiff failed to do so is not grounds for objecting to the Magistrate Judge's recommendation or the ALJ's ultimate decision, but rather, should have been raised at the administrative level. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.").

Finally, plaintiff presents an argument regarding the Dictionary of Occupation Titles (DOT) definition for accounts payable clerk, which notes that the position, as typically performed, involves handling documents and computing. Specifically, the plaintiff argues the ALJ ignored the VE's

---

[8] As noted above, the VE's testimony ended after the following statement: "Judge, it's a sitting. Most people don't sit. I mean, they have–it's dynamic. They can sit and stand and it's in a–it takes positionings. She didn't have that long–as long as she stays on tasks and stays [*sic*], then that would be the appropriate–" (Tr. 54).

conclusion that plaintiff would have difficulty performing these tasks when reaching his conclusion about the job as typically performed.

> The VE testified:
>
> Well, we–well, if I'm postured like that, you can stand and the keyboard can–you know, it's detachable from the computer and the computer–you know, it's you usually modify the job as your postural requirements, but it would be much more difficult, because, again, it's not so much composite, but it's the fact that you have papers and that you're reaching to throw in the desk and things like that. So that's why I've bifurcated to two things. One is the–you know, according to this–according to that job, according to the job performed, and she performed it to [*sic*] hard. And second is as performed. And I don't know how she did it as performed.
>
> . . .
>
> Now, what we have is now don't sit. You know, stand as much as you can, because it–you know, many, many reasons–and yes. . . . You know, a full day, but designed to move, so that with–but I'm–the more on the computer the person would be, the more likely it's [*sic*] would be difficult to perform those capacity, if it's only two, but–that's why I said that accounts payable is a–it's in the documents, the documents. And as I said, I don't know. Some companies are old fashioned and don't even use a computer. I know some companies that don't do it.

(Tr. 58-59).[9]

I find this argument not well taken. Even in light of the VE's determination that it would be difficult for plaintiff to handle documents and compute, neither the VE nor the ALJ is bound by the DOT definition alone when testifying or making a final determination about a claimant's ability to perform past work. Rather, the VE may "rely on sources other than the DOT in evaluating a hypothetical," *Baranich v. Barnhart*, 128 F. App'x 481, 486 n.3 (6th Cir. 2005) (citing 20 C.F.R. §

---

[9] In light of the fact that this testimony clearly could have been more refined, I refer to my conclusion above with respect to the other testimony of the VE. If plaintiff was dissatisfied with this portion of the VE's testimony, she had the opportunity, particularly when it was her attorney conducting cross-examination when these responses were given, to clarify the VE's response at the administrative hearing. *See also, e.g., McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[C]ounsel may not now complain because he failed to cross examine [the medical expert] when he had an opportunity to do so . . . .").

404.1566(d)), and the ALJ need only incorporate "those limitations [he or she] accepts as credible." *Casey, supra,* 987 F.2d at 1235; *see also Baranich, supra,* 128 F. App'x at 486 n.3 ("[I]t would be manifestly inappropriate to make the *Dictionary of Occupational* Titles the sole source of evidence concerning gainful employment. [Claimant] is therefore incorrect to argue that the ALJ could not include a sit/stand option when such an option is not indicated in the DOT, as the DOT is only one source to be used in assessing the availability of jobs for the claimant.") (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)).

Simply put, neither the VE or the ALJ were bound by the DOT definition for accounts payable clerk, and the ALJ was not required to incorporate the portion of the VE's testimony at issue into his ultimate determination concerning plaintiff's ability to perform past relevant work.

Because the ALJ's Step Four determination is supported by substantial evidence, I overrule plaintiff's objection.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Plaintiff's objections to the Report and Recommendation of the United States Magistrate Judge (Doc. 18) be, and the same hereby are, overruled; and

2. The Magistrate Judge's Report and Recommendation (Doc. 17) be, and the same hereby is, adopted as the Order of this Court.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge